**Signed and Filed: June 20, 2016**

**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Case No. 15-30690 HLB |
| | ) |
| INNOCENTI, LLC, | ) Chapter 7 |
| | ) |
| Debtor. | ) |
| _____ | ) |

### MEMORANDUM DECISION DENYING MOTION TO DISMISS

**I.  INTRODUCTION**

This case came before the Court on April 5 and April 21, 2016 for an evidentiary hearing on Louisa Trifiletti's Motion to Dismiss the above-captioned case (the "Motion").  The issue before the Court was whether WB Coyle was the sole member of Debtor Innocenti, LLC ("Innocenti") on April 18, 2014, the date the order for relief was entered in Mr. Coyle's involuntary Chapter 7 case (number 13-32412).  The parties agree that, if Mr. Coyle was sole member of Innocenti on that date, then Innocenti is property of Mr. Coyle's bankruptcy estate and the bankruptcy filing was authorized.

Michael St. James appeared for Ms. Trifiletti.  Jennifer Hayes appeared for Mr. Barry Milgrom, the Chapter 7 Trustee of Innocenti bankruptcy estate.  After the parties rested, the Court took the matter under advisement.

This memorandum decision constitutes the Court's findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. This court has jurisdiction over this contested matter under 28 U.S.C. § 1334(b). This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper pursuant to 28 U.S.C. § 1409.

For the reasons that follow, the Court finds that Mr. Coyle was the sole member and manager of Innocenti on the date the Court entered an order for relief in his case and that Innocenti is therefore property of Mr. Coyle's bankruptcy estate. Accordingly, the Motion is **DENIED**.

## II. BACKGROUND

### A. Factual Background

The following facts are undisputed. In 2003, Mr. Coyle, through his company North Beach Partners, LLC (collectively, "Mr. Coyle") entered into an agreement with Darryl Horsted to develop real property located at 2017-2021 Powell Street in San Francisco, California (the "Property"). Mr. Horsted owned the Property. Their collaboration did not go well and, in February 2012, Mr. Horsted sued Mr. Coyle for breach of contract, dissolution of partnership, appointment of a receiver, accounting, breach of fiduciary duties, declaratory relief, equitable and injunctive relief, and damages. In November 2012, the parties entered into a settlement, the upshot of which was that Mr. Coyle, through Innocenti, would buy the Property from Mr. Horsted at a price that would yield $250,000 to Mr. Horsted.

Case: 15-30690    Doc# 142    Filed: 06/20/16    Entered: 06/20/16 14:54:36    Page 2 of 29

To accomplish this, Mr. Coyle obtained a $1,200,000 loan from Loan Oak Fund, LLC ("Loan Oak"), which was secured by a first lien on the Property, and a $110,000 loan from his mother, Louisa Trifiletti.[1]  The Horsted transaction closed at the end of December 2012.

Approximately one year later, Pivot Point Partners, LLC ("Pivot Point") acquired the Loan Oak note and deed of trust, which matured in June 2014.

### B.  Procedural Background

Several creditors filed an involuntary bankruptcy petition against Mr. Coyle on November 4, 2013 (the "Coyle Bankruptcy"). After some skirmishing, Mr. Coyle consented to the entry of an order for relief, which occurred on April 18, 2014.  Thereafter, Ms. E. Lynn Schoenmann was appointed Chapter 7 Trustee (the "Coyle Trustee").

On October 30, 2014, the Coyle Trustee filed an adversary proceeding to unwind the allegedly fraudulent transfer of the membership interests in Innocenti from Mr. Coyle to his mother, Louisa Trifiletti (the "Adversary Proceeding").[2]  The Coyle Trustee alleged that Mr. Coyle was the sole member and manager of Innocenti at the time the Property was transferred to Innocenti in connection with the Horsted settlement; and that Mr. Coyle

---

[1]  Ms. Trifiletti testified at trial that she obtained the $110,000 from her company, Lefty, LLC, but did not know how the money went from Lefty, LLC to the seller of the Property.  The $100,000 appeared to have been an unsecured loan at the time of the December 2012 Horsted Transaction.  Approximately eight months later, Mr. Coyle executed a $110,000 promissory note and deed of trust on behalf of Innocenti for the benefit of Lefty, LLC.  Whether or not the $110,000 loan is secured or unsecured is not germane to this decision.

[2]  <u>Schoenmann v. Trifiletti et al.</u>, AVP. No. 14-03144 (Bankr. N.D. Cal. 2014).

Case: 15-30690   Doc# 142   Filed: 06/20/16   Entered: 06/20/16 14:54:36   Page 3 of 29

orchestrated the purported transfer of Innocenti to Ms. Trifiletti for the purpose of keeping the Property out of his creditors' reach, and for no consideration. The Coyle Trustee asserted that the transfer of Innocenti's membership interests should be avoided as a preference and/or a fraudulent transfer.

On February 5, 2016, Pivot Point filed a motion in the Coyle Bankruptcy to confirm that the Property was not subject to the automatic stay on the grounds that it did not belong to the Coyle estate, or alternatively, for relief from stay with respect to the Property because no payments had ever been made on the loan and there was no remaining equity to adequately protect Pivot Point (the "Pivot Point Motion"). The Coyle Trustee opposed the Pivot Point Motion, asserting that Mr. Coyle retained an interest in the Property because, after conducting discovery, the Coyle Trustee found no evidence that Mr. Coyle had actually transferred Innocenti to Ms. Trifiletti, and even if he had, any such transfer was an avoidable preference. The Court entered an order granting the Pivot Point Motion as to the request for relief from stay on June 16, 2015.

On May 28, 2015, while the Pivot Point Motion was still pending, the Coyle Trustee commenced the instant bankruptcy case by filing a petition for relief under Chapter 7 on Innocenti's behalf. The Coyle Trustee claimed the authority to do so based on her belief that Mr. Coyle was Innocenti's sole member and manager, rendering Innocenti an asset of the Coyle estate, and subject to the Coyle Trustee's control.

Barry Milgrom was appointed Chapter 7 Trustee of the Innocenti bankruptcy estate ("Innocenti Trustee"). The Innocenti

Case: 15-30690   Doc# 142   Filed: 06/20/16   Entered: 06/20/16 14:54:36   Page 4 of 29

Bankruptcy was filed to prevent Pivot Point from foreclosing on the Property if the Court granted the Pivot Point Motion in the Coyle Bankruptcy, which it did a few days later.

On June 11, 2015, Pivot Point filed in the Innocenti Bankruptcy a motion for relief from stay or to dismiss the case (the "Second Pivot Point Motion"). Pivot Point again asserted that relief from stay should be granted because Innocenti had not made any payments on the loan and the Property had no or inadequate equity to protect Pivot Point's security interest. Alternatively, Pivot Point asserted that the case should be dismissed because the Coyle Trustee did not have the authority to cause Innocenti to file bankruptcy. The Coyle Trustee opposed the Second Pivot Point Motion, noting that she had filed a request for a preliminary injunction against Pivot Point in the Adversary Proceeding to prevent Pivot Point from foreclosing on the Property until the Adversary Proceeding was resolved. On August 20, 2015, the Court granted the request for a preliminary injunction and denied the Second Pivot Point Motion. The Adversary Proceeding remains pending and discovery is ongoing.

Several months later, on December 10, 2015, Ms. Trifiletti filed the present Motion, asserting that Innocenti's bankruptcy filing was unauthorized because she, not Coyle, is the sole member and manager of Innocenti and she had not authorized the filing.

**III. LEGAL STANDARDS**

**A.   Motion to Dismiss**

The court may dismiss a case under Chapter 7 only after notice and a hearing and only for cause.  11 U.S.C. § 707 (a).

Movant has the burden to prove by a preponderance of the evidence that cause exists.  In re Hickman, 384 B.R. 832, 841 (B.A.P. 9th Cir. 2008).  The decision to dismiss a chapter 7 case for cause rests within the sound discretion of the bankruptcy court.  Id. at 840.  If the bankruptcy filing was not authorized, there is cause to dismiss case.  Price v. Gurney, 324 U.S. 100, 106 (1945)

**B.   Transfer of a California LLC[3]**

To form a limited liability company in California, one or more persons must execute and file articles of organization with the Secretary of State, and enter into an operating agreement. Cal. Corp. Code § 17050 (repealed Jan. 1, 2014).  The articles of organization and operating agreement govern the relationships among and between members.  Cal. Corp. Code § 17005(a) (repealed Jan. 1, 2014).  Any amendment of the articles of organization or operating agreement requires the unanimous vote of all members. Cal. Corp. Code § 17103(a)(2) (repealed Jan. 1, 2014).

A limited liability company can be either member-managed or manager-managed.  Cal. Corp. Code § 17157.  If member-managed, every member is an agent of the limited liability company and has the power to act on its behalf.  Cal. Corp. Code § 17157(a) (repealed Jan. 1, 2014).  If manager-managed, only the manager has the ability to act as agent for the company and bind the company.  Cal. Corp. Code § 17157(b) (repealed Jan. 1, 2014).

Unless otherwise provided in the articles of organization or the operating agreement, an assignee of an interest in a limited

---

[3]  In 2010, Mr. Coyle formed Innocenti and purportedly transferred it to Mr. Linton, who, in 2012, purportedly transferred Innocenti to Ms. Trifiletti. Accordingly, the Court cites to the relevant statutes applicable at the time of those transactions.

liability company may become a member only if a majority of the other members vote to allow the assignee to become a member. Cal. Corp. Code § 17303(a) (repealed Jan. 1, 2014).  Any action (such as a vote) may be taken without a meeting of the members if a consent in writing, setting forth the action so taken, is signed and delivered to the limited liability company within 60 days of the record date for that action.  Cal. Corp. Code § 17104(i)(1) (repealed Jan. 1, 2014).

## IV.  DISCUSSION

### A.  Movant's Arguments and Evidence

Ms. Trifiletti asserts that the Coyle Trustee was not authorized to file the petition on behalf of Innocenti because Mr. Coyle was not and has never been a member of Innocenti. According to Ms. Trifiletti, Mr. Coyle organized Innocenti in 2010 at the request of his friend, David Linton, because Mr. Linton wanted to sublease property from Mr. Coyle and somehow believed that the primary landlord would be more likely to approve a sublease to an entity with an Italian-sounding name. Ultimately, the primary landlord did not approve the Innocenti sublease, so Innocenti remained dormant.

In 2012, around the time Mr. Coyle settled with Mr. Horsted, Mr. Coyle allegedly asked Mr. Linton on Ms. Trifiletti's behalf if she could buy Innocenti.  Mr. Linton agreed, purportedly sold Innocenti to Ms. Trifiletti for the $335.00 he allegedly paid to have Innocenti formed, and transferred his membership interests to her.

Ms. Trifiletti asserts that, as the sole member of Innocenti, she caused Innocenti to borrow $110,000 from another

company she owned, Lefty, LLC, and contribute that money to the purchase of the Property through the Horsted settlement. Ms. Trifiletti asserts that although Mr. Coyle was initially the manager of Innocenti, since June 2013 he has done nothing on behalf of Innocenti but act as agent for service of process. At trial, Ms. Trifiletti changed this part of her story, asserting that after June 2013, Mr. Coyle no longer served as manager of Innocenti, although he continued to act as Property manager.

To support her assertions, Ms. Trifiletti called Mr. Coyle, Mr. Linton, and herself as witnesses at trial. All three witnesses corroborated her version of the facts. The Court admitted into evidence the following exhibits offered by Ms. Trifiletti:

- Ex. 1 - Innocenti's Articles of Organization dated April 1, 2010.

- Ex. 2 - Innocenti Operating Agreement dated April 22, 2010 (reflecting Linton as owner of all membership interests).

- Ex. 3 - A "Biz Filings" receipt dated March 28, 2010, bearing a hand written note signed by Mr. Coyle and dated April 22, 2010 that states "received $335 cash from Andrew Linton."

- Ex. 4 - A handwritten receipt by Mr. Linton dated December 21, 2012 noting receipt of $335 from Mr. Coyle on behalf of Ms. Trifiletti for "purchase of all of my membership interest of Innocenti, LLC."

- Ex. 5 - Mr. Linton's Membership Certificate for Innocenti dated April 22, 2010 which has a large black "X" across it

with a handwritten note by Mr. Linton, "Sold to Louisa Trifiletti 12/21/12."

- Ex. 10 – A promissory note dated August 28, 2013 showing $110,000 payable to Lefty, LLC by Innocenti (the "Lefty Note"). The Lefty Note is signed by Mr. Coyle on behalf of Innocenti.

- Ex. 11 – A deed of trust dated August 29, 2013 in favor of Lefty, LLC for the $110,000 note owed by Innocenti, secured by the Property[4] (the "Lefty DOT"). The Lefty DOT is signed by Mr. Coyle as manager of Innocenti.

Ms. Trifiletti did not introduce documentary evidence conclusively proving that she was or is the sole member of Innocenti, that she removed Mr. Coyle as manager in June 2013, or that she subsequently authorized Mr. Coyle to take action on behalf of Innocenti.

### B. The Innocenti Trustee's Arguments and Evidence

The Innocenti Trustee asserts that Mr. Coyle is and always has been the sole member of Innocenti and that Mr. Coyle fabricated the story of his mother's ownership and control of Innocenti to keep the Property away from his creditors. The Innocenti Trustee asserts that Movant's witnesses are not credible and that the documents speak for themselves.[5] In sum,

---

[4] The Lefty DOT references the property listed in Exhibit A, but Exhibit A is not attached, however, the Property address is set forth at the top of the DOT and the parties to not dispute that the Property purportedly secures the Lefty DOT.

[5] The Innocenti Trustee made several arguments in his initial opposition to the Motion that he dropped after further briefing and did not argue during trial. Namely, that the Coyle Trustee was authorized to file the Innocenti bankruptcy by virtue of Mr. Coyle being its manager regardless of his being a member; that an alter ego finding would permit the Coyle Trustee to step into

the substance of the Innocenti Trustee's argument is that Mr.
Coyle is a liar and that therefore, the Court should deny Ms.
Trifiletti's Motion.

In support of her arguments, the Innocenti Trustee called
Sheila Bakhtiari and Darryl Horsted as witnesses, each of whom
testified as to their relationships and interactions with Mr.
Coyle.  Ms. Bakhtiari, a subtenant at the Property, testified
that she had never heard the name Innocenti before the day of
trial.  She authenticated several rent checks that she signed in
blank and gave to Mr. Coyle at his instruction.  Mr. Coyle's name
was later entered on the check as a payee.  It appears that Ms.
Bakhtiari's testimony was offered for the purpose of proving
that, contrary to Mr. Coyle's and Ms. Trifiletti's testimony, Mr.
Coyle continues to control the Property.  While Ms. Bakhtiari's
testimony undercut Ms. Trifiletti's and Mr. Coyle's credibility,
Mr. Coyle's control of the Property constitutes a factual issue
relevant only tangentially, if at all, to whether he owned
Innocenti as of the date of the entry of the order for relief in
the Coyle Bankruptcy.

Mr. Horsted testified that the Darrel C. Horsted Revocable
Trust owned the Property from 2010 to 2012 and that he owned the
Property personally prior to that.  Mr. Horsted also offered
testimony on other subjects aimed at undermining the credibility
of Mr. Coyle's and Ms. Trifiletti's testimony and, while Mr.
Horsted's testimony served that purpose, it remains ancillary to

Mr. Coyle's shoes and file bankruptcy on behalf of Innocenti;, and that Ms.
Trifiletti should be judicially estopped from pursuing the Motion because she
did not move to dismiss until the case had been pending seven months.

the central issue presented by the Motion:  whether Mr. Coyle
owned Innocenti on the date the court entered the order for
relief in the Coyle Bankruptcy.

   The Court admitted the following documents into evidence at
the Innocenti Trustee's request:

- Ex. A - Innocenti's Operating Agreement dated April 1, 2010
  (showing Coyle as Innocenti's sole member).

- Ex. E - A complaint by Mr. Horsted against Mr. Coyle and two
  corporate entities allegedly owned or controlled by Mr.
  Coyle filed in the San Francisco County Superior Court on
  February 24, 2012.

- Ex. F – The settlement agreement between Mr. Horsted, Mr.
  Coyle, and Mr. Coyle's entities dated November 1, 2012 (the
  "Horsted Settlement").  The Horsted Settlement states that
  Mr. Coyle and the entities have assigned all their right,
  title, and interest under the joint venture agreement to
  develop the Property and their equitable interest (if any)
  in the Property to "Innocenti LLC, a California limited
  liability company of which WB Coyle is the only member."
  Horsted Settlement, ¶ 1(D).  The Horsted Settlement also
  states that close of escrow shall occur by December 31,
  2012, but that at [Innocenti's] option, the close of escrow
  may be extended to March 31, 2013 subject to [Innocenti]
  paying the Property's expenses through that time, and paying
  up to $25,000 of increased capital gains taxes to which Mr.
  Horsted would be subject in 2013.  Horsted Settlement, ¶¶
  2(A)(i)-(iii).  Mr. Coyle signed the Horsted Settlement on

Case: 15-30690   Doc# 142   Filed: 06/20/16   Entered: 06/20/16 14:54:36   Page 11 of
29

behalf of Innocenti as its "Managing and only member."
Horsted Settlement at p. 7.

- Ex. N – Pacific Gas and Electric business records for the Property.
- Ex. O – San Francisco Public Utilities Commission business records for the Property.
- Ex. X – Wells Fargo Bank records consisting of copies of checks written by Ms. Bakhtiari.[6]
- Ex. CC – Lone Oak's loan documents, which include (1) the Innocenti Operating Agreement dated April 1, 2010 showing Mr. Coyle as 100% owner of Innocenti and signed by Mr. Coyle as "Member/Manager"; (2) Innocenti articles of organization filed on April 1, 2010; (3) a Certificate of Business Purpose of Loan dated December 10, 2012 and signed by Mr. Coyle as "Borrower;" and (4) a Declaration of Non-Owner Occupancy signed by Mr. Coyle on December 10, 2012 as "Borrower."
- Ex. DD – A judgment of the San Francisco Superior Court of dated September 5, 2014 (admitted only for purposes of impeachment).[7]
- Ex. EE – A substitution of attorney filed on behalf of Innocenti in a state court proceeding[8] signed by Mr. Coyle on behalf of Innocenti on March 7, 2014.

---

[6] The Court finds exhibits N, O, and X irrelevant to the question presented.

[7] Sollner, et al. v. Linton, et al., Case Number CUD-13-644781 (San Francisco Sup. Ct. September 5, 2014).

[8] Sollner v. North Beach Partners, et al., Case Number CGC-13-531496 (San Francisco Sup. Ct. 2013).

- Ex. FF – A promissory note dated December 19, 2012 for $1,200,000 payable to Lone Oak by Innocenti (the "Lone Oak Note"), signed by Mr. Coyle as managing member for Innocenti.
- Ex. GG – A deed of trust dated December 19, 2012 which secured the Lone Oak Note with a lien on the Property (the "Lone Oak DOT"). The Loan Oak Dot is signed by Mr. Coyle as managing member for Innocenti.

**C. Movant's Witnesses' Testimony**

    **a. Ms. Trifiletti**

Ms. Trifiletti testified generally that she is the sole member and manager of Innocenti and was so at the time the court entered an order for relief in the Coyle Bankruptcy. Ms. Trifiletti, however, was not a credible witness, as her testimony was wildly inconsistent with other evidence, including her own prior sworn statements. Her constantly changing story about the ownership and management of Innocenti and her inconsistent statements concerning her own knowledge and sophistication require the Court to give little credence to her version of the facts.

    **i. Resolution removing Mr. Coyle as manager of Innocenti in June, 2013.**

At a deposition that took place on March 25, 2015 ("Trifiletti Deposition"), Ms. Trifiletti testified that Mr. Coyle decided to relinquish his role as manager of Innocenti voluntarily, without any discussion. Transcript of Trifiletti Deposition at 75:16-19, docket no. 125. She further testified that she could not remember when he stepped down as manager and

could not estimate as to when that would have been. <u>Id.</u> at 75:20-23; 76:1-8; 106:1-13. She also did not know if there was a writing discharging Coyle as manager. <u>Id.</u> at 76:1-8; 224:25-225:1-8.

In her declaration filed in support of the Motion on December 10, 2015, Ms. Trifiletti offered a different story, stating that she discharged Coyle as manager of Innocenti on June 21, 2013 because she feared the litigation in which he was involved would extend to and jeopardize Innocenti. Decl. of Louisa Trifiletti in Support of Motion to Dismiss Bankruptcy Case ("Trifiletti Decl."), ¶¶ 11-12, docket no. 73.

At trial, Ms. Trifiletti offered yet another story, testifying that she removed Mr. Coyle as manager at the suggestion of his lawyers because his position as manager might place Innocenti in trouble given its association with Mr. Coyle and because she felt like he did not have the time to be manager because he was dealing with a lot of litigation. She further testified that she created the written resolution removing Mr. Coyle as manager using a form from an LLC packet. She testified that it was easy to do and that she remembered doing it because it was a big decision to remove him.

When asked at trial about her prior inconsistent statements, Ms. Trifiletti attributed them to the fibromyalgia from which she allegedly suffers. According to Ms. Trifiletti, fibromyalgia causes "brain fog," on which she did not elaborate. She also indicated that her fibromyalgia "flares up" when she is under stress, which she claimed to be at the time she removed Mr. Coyle as manager. She offered the death of a family member and serving

as president of a local women's club as examples of stressors in her life at the time she allegedly removed Mr. Coyle as Innocenti's manager.

The Court does not find Ms. Trifiletti's explanation credible. Ms. Trifiletti is not a physician, and her attribution of her constantly changing version of events to "brain fog," is not specific enough to rehabilitate her credibility. Moreover, and as Ms. Trifiletti proudly pointed out at trial, she has nearly two decades of experience as a corporate paralegal, which implies a level of sophistication beyond what she claims. In sum, Ms. Trifiletti did not adequately explain why her deposition testimony, in which she claimed to have no knowledge of a writing removing Mr. Coyle as manager for Innocenti and no idea when he was removed as manager or why she stated that his removal was Mr. Coyle's unilateral decision, differed so dramatically from her trial testimony, in which she suddenly had complete command over a divergent story.

Ms. Trifiletti also gave inconsistent testimony at trial with respect to her ability to find documents, in particular, the purported resolution to remove Mr. Coyle as manager. Ms. Trifiletti testified that she had worked 18 years as a paralegal, assisting in cases that generated volumes of documents – enough to fill the entire courtroom. As a paralegal, she summarized these documents and coded them for privilege. This experience permits the Court to infer that Ms. Trifiletti understands the importance of organizing and maintaining accurate records. Yet, when asked to explain why she had not produced the resolution in which she purported to remove Mr. Coyle as manager of Innocenti

prior to or at her March 25, 2015 deposition, Ms. Trifiletti explained that she is not very good at finding things and the room in which the resolution was located was filled with piles of papers. Ms. Trifiletti testified that she eventually found the resolution in that room, but when questioned further, admitted that Mr. Coyle found the resolution while she was in another part of the house. Her testimony severely undermines the reliability and authenticity of this document, as well as her version of when and how she allegedly removed Mr. Coyle as Innocenti's manager.

### ii. Management of Innocenti and the Property after June, 2013.

Inconsistencies also pervaded Ms. Trifiletti's testimony regarding management of Innocenti and management of the Property after Mr. Coyle purportedly stepped down as manager. In her December 2015 declaration in support of the Motion, Ms. Trifiletti stated, "I have been the sole manager of Innocenti, LLC ever since [June, 2013]. My son's only involvement with Innocenti, LLC thereafter has been to act as its agent for service of process." Trifiletti Decl., ¶ 12, docket no. 73.

In her prior deposition testimony, however, Ms. Trifiletti appeared unclear about the management of Innocenti. At first she claimed that she managed the Property. Transcript of Trifiletti Deposition at 106:24-25 – 107:1, docket no. 125. But then she admitted the following:

- She had never seen Property. <u>Id.</u> at 106:17-20.
- She does not collect rents and does not know who does. <u>Id.</u> at 107:2-8.

- She does not know if rents are being collected: <u>Id.</u> at 109:3-9.
- She does not know if the loan on the Property is being paid or if it has been paid off. <u>Id.</u> at 110:1-5.

Later in her deposition, Ms. Trifiletti stated that Mr. Coyle is her manager (<u>id.</u> at 111:24-25) and that Mr. Coyle oversees things for her (<u>id.</u> at 127: 12-13). She did not know the difference between Mr. Coyle's roles as manager of Innocenti versus his current role. <u>Id.</u> at 127:21-25 – 128:1-16.

As to her being manager of Innocenti since June 2013, Ms. Trifiletti's testimony again proved inconsistent and unreliable.

- She did not know how much cash Innocenti has. <u>Id.</u> at 199:14-15
- She did not know if Innocenti has a checking account. <u>Id.</u> at 199:23-25
- She did not recall signing any documents for Innocenti. <u>Id.</u> at 200:10-12
- She did not know if Innocenti has corporate books or accounting. <u>Id.</u> at 205:10-12
- She has never seen a bill for the mortgage and does not know who would receive such a bill. <u>Id.</u> at 120:12-14, 17-19
- At trial when presented with Ex. 10, the Lefty Note, she could not identify the document and could not identify the borrower.
- At trial, she testified that she never signed any tax returns for Innocenti, was not aware of any property taxes paid by Innocenti, and did not know if the Property has insurance.

Case: 15-30690   Doc# 142   Filed: 06/20/16   Entered: 06/20/16 14:54:36   Page 17 of 29

At trial, Ms. Trifiletti changed her position with respect to Mr. Coyle's involvement with Innocenti. She no longer asserted, as she had in the Motion, that he served only as agent for service or process, but testified that Mr. Coyle acted as Property manager for her after June 2013.

In addition, contrary to the assertion in the Motion that "[s]ince June 21, 2013, Ms. Trifiletti has not authorized any other person to take any action on behalf of Innocenti, LLC," (Motion at 1:16-17, docket 73), Ms. Trifiletti testified at trial that she authorized Mr. Coyle to sign the Lefty note and Left DOT on Innocenti's behalf in August, 2013. Ms. Trifiletti did not produce any writing to corroborate her testimony.

Once again, Mr. Trifiletti's testimony during her deposition differed so drastically from her trial testimony that she simply cannot be believed.

### iii. Ms. Trifiletti's sophistication

At trial, Ms. Trifiletti made inconsistent statements about her sophistication with respect to her business and real estate transactions. Ms. Trifiletti testified that she has no experience with real estate, stating "I am not very savvy about real estate or settlements on houses and that whole entire language." Just before she made these statements, however, she explained why she provided $110,000 towards the purchase of the Property: "I thought that the Property would gain in value over a short period of time once the real estate industry recovered from the collapse. I thought it would be a viable investment." Rather than someone completely ignorant of real estate transactions, this testimony suggests that Ms. Trifiletti paid

Case: 15-30690    Doc# 142    Filed: 06/20/16    Entered: 06/20/16 14:54:36    Page 18 of
29

sufficient attention to the San Francisco real estate market that she believed herself capable of making an informed decision to invest in that market.

In her declaration in support of the Motion, Ms. Trifiletti stated, "I told my son I would only engage in the purchase through an entity and asked him to form one." Trifiletti Decl., ¶ 7, docket 73. And at trial she testified that she did not want to acquire the Property personally; instead she wanted it to be part of a corporation or an LLC because "that's the way business is done." Finally, she testified at trial that she owns another property in Mexico and formed a corporation for that property. Here again, Ms. Trifiletti's testimony strongly suggests that she is hardly a neophyte with respect to business transactions.

### b. Mr. Linton

Mr. Linton's testimony corroborated the story that Mr. Coyle created Innocenti on Mr. Linton's behalf and that Mr. Linton subsequently sold Innocenti to Ms. Trifiletti. Mr. Linton's testimony, however, lacks credibility for two reasons. First, Mr. Linton admitted that Mr. Coyle has allowed him to live or work on various occasions rent free in properties owned or leased by Mr. Coyle. This testimony, as well as Mr. Linton's history of close business and personal associations with Mr. Coyle, shows a potential for bias.

Second, Mr. Linton's testimony is contradicted by documentary evidence submitted by the Innocenti Trustee. In Mr. Linton's declaration filed in support of the Motion, Mr. Linton stated that Mr. Coyle never had an interest in Innocenti and that Mr. Linton was the sole member up until he transferred Innocenti

Case: 15-30690   Doc# 142   Filed: 06/20/16   Entered: 06/20/16 14:54:36   Page 19 of
29

to Ms. Trifiletti. This testimony, however, is inconsistent with the Innocenti operating agreement dated April 1, 2010, the Horsted Settlement, and the loan documents Mr. Coyle submitted to Lone Oak for the purpose of obtaining $1.2 million, all of which show Mr. Coyle as sole member of Innocenti. Trustee's Exs. A, F, and CC.

### c. Mr. Coyle

Mr. Coyle also corroborated the story that he formed Innocenti on behalf of Mr. Linton at Mr. Linton's request, subsequently facilitated the sale of Innocenti to his mother, and was never himself a member of Innocenti. Mr. Coyle's testimony, too, lacks credibility.

#### i. Testimony regarding documents signed by Mr. Coyle as sole Member and Manager of Innocenti

To explain why Mr. Coyle had signed the Horsted Settlement as sole member and manager of Innocenti, Mr. Coyle testified that he knew the Horsted Settlement agreement was incorrect as to its description of the capacity in which he signed it but, given his desire to conclude the Horsted Settlement quickly, he decided "who cares" and signed it anyway.

Mr. Coyle also testified, however, that the Horsted Settlement was drafted by his attorney, Nancy Lenvin, several weeks before he signed it. This allowed plenty of time for Mr. Coyle to instruct his counsel to correct such an obvious error, which he did not do. That Mr. Coyle did not instruct his counsel to correct the Horsted Settlement strongly suggests that the agreement was not, in fact, incorrect at the time it was drafted or signed.

Case: 15-30690   Doc# 142   Filed: 06/20/16   Entered: 06/20/16 14:54:36   Page 20 of 29

To explain why Mr. Coyle was identified as borrower and sole Member of Innocenti in the documents he provided to Lone Oak to obtain the $1,200,000 loan, Mr. Coyle testified that because Lone Oak is an "equity lender," it makes underwriting decisions based solely on the value of the collateral that will secured the debt and that the identity of the borrower is irrelevant. Counsel made no effort to prove that Mr. Coyle was competent to testify as to Lone Oak's business practices or underwriting criteria. While it is certainly true that a lender contemplating a loan secured by real property considers the value of that real property important, the Court received no competent evidence that this lender considered that value and only that value in evaluating whether to make this loan.

Mr. Coyle also suggested that his desire to close the Lone Oak transaction quickly motivated him to complete the loan application incorrectly, but this explanation makes no sense.[9] It would have taken the same amount of time to complete the loan application in a manner consistent with his current version of the facts. The lack of competent testimony as to Lone Oak's underwriting policies and the lack of a credible explanation as to why the Lone Oak loan documents are "incorrect" leads the court to discredit entirely Mr. Coyle's testimony on these points.

With respect to the April 1, 2010 Innocenti operating agreement, which identifies Mr. Coyle as the 100% owner of

---

[9] The Court notes that the settlement, "at Buyer's option" allowed Mr. Coyle to extend the deadline to close escrow to March 31, 2013. This fact also belies Mr. Coyle's testimony that the Settlement and loan documents were incorrect because he was in a rush to close.

Innocenti and which he provided to Lone Oak to obtain the loan,
Mr. Coyle testified that he wanted to get escrow opened quickly
so he printed a form operating agreement from his computer and
identified himself as the 100% owner of Innocenti because he did
not have Mr. Linton's operating agreement.  The Court does not
find this testimony credible.  If Mr. Linton was truly
Innocenti's owner and Lone Oak truly did not care who its
borrower was, why not be accurate and keep Mr. Linton's name on
the operating agreement if, in fact, he was Innocenti's sole
member?  And why back date the operating agreement to April 1,
2010 when Mr. Linton's purported operating agreement was dated
April 22, 2010?

In short, Mr. Coyle's "explanations" raise more questions
than they answer and lead the court to conclude that he simply
cannot be trusted.  The same is true with respect to his
testimony concerning his admitted execution of documents at the
closing of sale of the Property that described him as Innocenti's
"Member."

Mr. Coyle testified that the title company would not let him
cross out "Member" where he was identified as such.  He insisted
that the title company instructed him to sign the documents as
written or new, corrected docs would have to be obtained from the
lender, delaying closing.  Mr. Coyle also testified, however,
that he brought a "corrected" operating agreement to the closing
and offered it to the title company.  But when asked if providing
this "corrected" operating agreement was what caused the
kerfuffle that resulted in the title company warning of the need
for corrected documents from Lone Oak, Coyle said no, and stated

that the title company did not care who the owner of Innocenti,
was, but was simply verifying that the person signing was the
person in front of them.

The Court does not find Mr. Coyle's testimony credible.
First, the court received no evidence whatsoever that Mr. Coyle
was competent to testify as to the title company's practices and
policies. No corroborating testimony from a competent witness on
behalf of the title company was offered. Further, it makes no
sense to suggest that the title company would insist on Mr. Coyle
signing as "Member" if he had actually presented a "corrected"
operating agreement that identified someone else as 100%
member.[10]

Mr. Coyle's actions with respect to the Settlement and Lone
Oak loan were consistent with the documents that identify him as
the sole member and manager of Innocenti. The Court finds that
Mr. Coyle's testimony characterizing all documents identifying
him as Innocenti's sole member and manager as "mistakes" to be
completely lacking in credibility.

**ii. Mr. Coyle's inconsistent statements**

In addition to the problems with the credibility of the
testimony outlined in the preceding section, Mr. Coyle made
several more inconsistent statements during trial. Mr. Coyle
testified that, while the Lefty Note and Lefty DOT should have
been recorded in 2012 when escrow closed, the title company
overlooked that important detail because there were too many
moving parts. Mr. Coyle also testified that he drafted the Lefty

---

[10] The referenced "corrected" operating agreement was not introduced at
trial.

Note and Lefty DOT.  The documents are, however, respectively dated August 28, 2013 and August 29, 2013 more than six months after the title company "should have recorded them," and two months after Ms. Trifiletti allegedly removed him as Innocenti's manager.

To explain why Mr. Coyle signed documents on Innocenti's behalf after Ms. Trifiletti purportedly removed him as manager, Mr. Coyle stated that Ms. Trifiletti authorized him to sign the Lefty Note and Lefty DOT and that she documented this authorization on a 3x5 card.  Notably, Ms. Trifiletti did not offer any such writing into evidence.

Mr. Coyle also testified that Ms. Trifiletti authorized him to sign the substitution of attorney in the state court proceeding on behalf of Innocenti.  Mr. Coyle's acts on behalf of Innocenti after June 2013 are inconsistent with Ms. Trifiletti's initial testimony that he did nothing but act as agent for service of process after that date and her later testimony that he was merely Innocenti's Property manager after that date.

On cross examination, Mr. Coyle adamantly maintained that he would not backdate a document.  This is patently at odds with his testimony that he doctored the Innocenti operating agreement he submitted to Lone Oak, which he professed to backdate to April 1, 2010.  It is also inconsistent with the state court judgment finding that Mr. Coyle had backdated documents to further his conspiracy with Mr. Linton.  Trustee's Ex. DD at 8.

**D.  Documentary Evidence**

Given that the stories told by witnesses offered in support of the Motion lack trustworthiness, the Court returns to the

Case: 15-30690   Doc# 142   Filed: 06/20/16   Entered: 06/20/16 14:54:36   Page 24 of 29

story as written in the documents admitted into evidence.

        **a.   Movant's Documents**

      The documents submitted by Movant do not prove by a preponderance of the evidence that Ms. Trifiletti was sole member and manager of Innocenti at the time the Court entered the order for relief in the Coyle Bankruptcy.  The Innocenti Articles of Organization do not identify members or managers and offer no assistance on this point.

      The Court also finds unpersuasive the Innocenti operating agreement identifying Mr. Linton as 100% member, the receipt from Biz Filings with a handwritten note by Mr. Coyle indicating Mr. Linton had paid him $335, the handwritten receipt by Mr. Linton indicating Mr. Coyle had repaid him the $335 on behalf of Ms. Trifiletti, and the Innocenti Membership Certificate identifying Mr. Linton as the certificate holder but which has been crossed out by hand and includes a handwritten note that Innocenti was sold to Ms. Trifiletti.  Given the credibility problems of the witnesses offered in support of the Motion, their handwritten notes carry little to no weight.  The April 22, 2010 operating agreement also suffers from Mr. Coyle's testimony that he had saved it to his computer and was willing and able to doctor it as necessary to serve his purposes.

      The Lefty Note and Lefty DOT showing that Innocenti borrowed $110,000 also do not assist in establishing that Ms. Trifiletti was sole member and manager of Innocenti at the time they were created, as both documents are signed by Mr. Coyle on Innocenti's behalf, nearly two months after Ms. Trifiletti allegedly rescinded his authority to take such action.

### b. Innocenti Trustee's Documents

Though the Innocenti Trustee, as the non-moving party does not carry the burden of proof, he has demonstrated by a preponderance of the evidence that Mr. Coyle was and always has been the sole member and manager of Innocenti. The Horsted Settlement and the Lone Oak loan documents serve as persuasive evidence that Mr. Coyle was in fact sole member and manager of Innocenti at the time they were signed. And unlike any of the evidence submitted by Movant, third parties relied on the documents submitted by the Trustee to settle a $250,000 lawsuit and to extend a $1,200,000 loan. The Trustee has submitted evidence demonstrating that, consistent with his status as Innocenti's sole member and manager, Mr. Coyle continued to control Innocenti and its principal asset – the Property - after his bankruptcy case was filed, such as by signing a substitution of attorney, collecting rent from Ms. Bakhtiari, etc.

All of that said, even if one accepts Ms. Trifiletti's version of the facts as true, the purported transfer of Innocenti's membership interests to her did not comport with applicable law and should not be enforced here.

### c. Purported Transfers of Innocenti

The Innocenti operating agreement (in both versions submitted as evidence) contains the following language:

Article VIII. – Voting; Members Meetings

8.1 Voting:

(b) The consent of all Members will be required to approve the following . . . 6) the sale, exchange, lease, or transfer of all or substantially all of the assets of the

1  Company other than in the ordinary course of business . . .
2  9) the admission of a new Member . . . 11) an amendment to
3  the Operating Agreement.
4  8.6 Unanimous Written Consent:  Any action required or
5  permitted to be taken at an annual or special meeting of the
6  Members may be taken without a meeting if consent in
7  writing, setting forth the action so taken, is signed by all
8  the Member's attorney-in-fact.

9  Here, the Innocenti operating agreement designating Mr.
10 Coyle as sole member and manager is dated April 1, 2010, the same
11 date that the Articles of Organization were filed with the
12 California Secretary of State.  The Court finds this to be
13 persuasive evidence that the April 1, 2010 operating agreement
14 was the original operating agreement and that, as of April 1,
15 2010, Mr. Coyle was the sole member and manager of Innocenti.[11]

16 This is consistent with Mr. Coyle's identification of
17 himself as sole member and manager for purposes of the Settlement
18 and to obtain the Lone Oak loan.  Similarly, there is no evidence
19 of a written resolution to transfer Innocenti to Ms. Trifiletti,
20 or evidence of meeting minutes so deciding.  So, even if the
21 Court believed the stories proposed by Movant's witnesses, as a
22 matter of law, Mr. Coyle remained the sole member and manager of
23 Innocenti from April 1, 2010 when he formed the company through
24 the date the Court entered an order for relief in his bankruptcy

25 _____
26 [11] Even if the Court were to give weight to the Innocenti operating agreement
   dated April 22, 2010 designating Mr. Linton as the sole member of Innocenti
27 (which it does not), is the court received no evidence that a written
   resolution to transfer Innocenti to Mr. Linton or to admit him as a new member
   of Innocenti as required by the operating agreement was ever executed or even
28 exists.

Case: 15-30690   Doc# 142   Filed: 06/20/16   Entered: 06/20/16 14:54:36   Page 27 of
29

case. <u>In re Louis J. Pearlman Enterprises, Inc.</u>, 398 B.R. 59, 67 (Bankr. M.D. Fla. 2008) (purported transfer of LLC was void when LLC's majority member did not execute requisite writings to effect transfer, as required by operating agreement.)

### V.   CONCLUSION

For the foregoing reasons, the Court finds and concludes that Movant has failed to meet her burden of demonstrating by a preponderance of the evidence that Ms. Trifiletti was sole member and manager of Innocenti at the time Mr. Coyle's involuntary bankruptcy petition was filed, or at any other time.  The Court finds that Mr. Coyle was sole member and manager of Innocenti at all relevant times and that Innocenti is property of the Coyle bankruptcy estate.  Accordingly, the Motion is **DENIED.**

**\*\*END OF ORDER\*\***

## Court Service List

[None]